IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

HOWARD WALSH,

    *Petitioner*,

  v.

DANA METZGER, WARDEN, AND
THE ATTORNEY GENERAL OF THE
STATE OF DELAWARE,

    *Respondents*.

No. 19-cv-589-SB

---

Howard Walsh

*Pro Se*

Brian L. Arban, DELAWARE DEPARTMENT OF JUSTICE, Wilmington, Delaware

*Counsel for Respondents*

---

**MEMORANDUM OPINION**

February 3, 2023

BIBAS, *Circuit Judge*, sitting by designation.

    Federal habeas claims must allege that prior proceedings were not just flawed, but fundamentally unlawful. That is a bold claim. So it comes with a hefty burden. Because petitioner Howard Walsh has failed to carry that burden, I dismiss his petition.

# I. BACKGROUND

## A. Walsh's jury trial

In 2014, Walsh was parked outside Miller's Gun Shop, wearing a camouflage flak jacket and a badge that read "Carry Concealed Permit." D.I. 26-3 at 86–87. His wife was shopping inside. *Id.* at 82. When she came out, she handed him the gun she had just bought. *Id.* at 82–83, 89. Walsh racked it. *Id.* at 81–82.

All this was observed by another customer who had also just come out of the store. *Id.* at 79–83. Being a veteran and experienced gun owner himself, that customer called the police to report Walsh's suspicious activity. *Id.* at 79–80.

Officers soon arrived and approached Walsh. One saw a handgun on the passenger-side floorboard. *Id.* at 88–89. The other asked Walsh who he was. *Id.* at 95–96. Walsh said he was a detective—then laughed and told them his name. *Id.* at 96. The officers searched Walsh and found that he had a taser labeled "Police." *Id.* at 96–97. He also had a holster, which, he explained, was for other guns he had at home. *Id.* at 98. After Walsh consented to a search of his home, the police discovered two black-powder guns and black-powder ammunition. *Id.* at 98–107.

Trouble was, Walsh was a felon who could not lawfully possess guns or ammunition. (In 1988, he was convicted of New York second-degree burglary. D.I. 2-1 at 1.) He was indicted on three counts of unlawfully possessing a firearm and one count each of (1) unlawfully possessing ammunition, (2) carrying a concealed dangerous instrument, and (3) criminal impersonation. D.I. 16 at 1; D.I. 26-3 at 3; *see* 11 Del. C. §§ 1448 (firearm and ammunition), 1443 (dangerous instrument), 907 (impersonation).

The jury convicted Walsh on all counts. D.I. 2-1 at 1. The Superior Court then sentenced Walsh to thirty years' imprisonment: each gun-possession charge carried a ten-year mandatory minimum, and Walsh got three years' suspended time on the other convictions. *Id.* at 3. Walsh appealed his convictions and sentence, but the Delaware Supreme Court affirmed. *Id.* at 1.

**B. Walsh's postconviction proceedings**

Walsh next sought state postconviction relief. *See generally* D.I. 26-2. The Superior Court appointed counsel to assist him. D.I. 26 ¶ 50. It ultimately rejected his claims. *State v. Walsh*, 2018 WL 4638010, at *5 (Del. Super. Ct. Sept. 26, 2018). On appeal, the Delaware Supreme Court affirmed. *Walsh v. State*, 2019 WL 1125882, at *3 (Del. Mar. 11, 2019).

Walsh then filed this federal habeas suit. He advances several claims. His first and most substantial is that his trial counsel was ineffective by failing to (a) file a discovery request for all police dashcam footage, (b) move to suppress the fruits of the search of his home, (c) raise a mistake-of-law defense, (d) object to the prosecution's improper statements at trial, and (e) object to the use of his criminal history at trial and sentencing. Second, he argues that his postconviction counsel was ineffective. Third, he says police violated his due-process rights. Fourth, he claims that he was deprived of a fair trial because the prosecution intimidated the jury. Last, he contends that his sentence violated the Constitution's Ex Post Facto Clause. None of his claims succeeds.

**C. Legal standard**

Under 28 U.S.C. § 2254, a state prisoner like Walsh may seek federal habeas relief in limited circumstances. First, he must exhaust all available state remedies. § 2254(b)(1)(A). Once the claim is exhausted, the state prisoner can come to federal court.

A federal court's review of the state court decisions is highly deferential if the state court ruled "on the merits." § 2254(d). A decision is "on the merits" if it resolves the claim based on its substance, "rather than on a procedural, or other, ground." *Thomas v. Horn*, 570 F.3d 105, 114–15 (3d Cir. 2009).

The highly deferential review of state merits decisions has two parts. A federal court may grant relief only if the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal *law*, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the *facts* in light of the evidence presented in the State court proceeding." § 2254(d)(1)–(2) (emphases added).

On the law, federal habeas is precluded "so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harington v. Richter*, 562 U.S. 86, 101 (2011) (internal quotation marks omitted). That is a deliberately high bar. *See id.* at 102. And when the underlying legal question involves a general and flexible standard, state courts get even "more leeway." *Id.* at 101 (internal quotation marks omitted).

As for the facts, a federal court must presume that the state court's findings were correct. § 2254(e)(1). This presumption applies to both explicit findings and inferences drawn from those findings. *Parke v. Raley*, 506 U.S. 20, 35 (1992). The petitioner

bears the burden to rebut the presumption. § 2254(e)(1). And he can carry that burden only by clear and convincing evidence. *Id.*

## II. WALSH'S TRIAL COUNSEL WAS EFFECTIVE

On top of the heavy habeas burden, *Strickland* makes review of ineffective-assistance claims "doubly deferential." *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011) (internal quotation marks omitted). To be ineffective, counsel must have (1) performed objectively unreasonably and (2) prejudiced the defendant by that unreasonable performance. *Strickland v. Washington*, 466 U.S. 668, 688, 692, 697 (1984). In determining unreasonableness, the reviewing court "must be highly deferential" and strongly presume that "counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

Putting the habeas and ineffective-assistance standards together, the question here is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105.

### A. The dashcam-discovery claim

Walsh alleges that trial counsel was ineffective for failing to "file the proper Rule 16 discovery motion to have the state police produce all their video footage from all their patrol cars … that responded … at Miller's Gun Shop." D.I. 2 at 5. He says the video would have shown that the police coerced Walsh and his wife to get Walsh's consent to search his home. *Id.* at 16. The Delaware Superior Court denied his claim, and the Delaware Supreme Court affirmed. *Walsh*, 2018 WL 4638010, at *3–4; *Walsh*, 2019 WL 1125882, at *3. They were right.

A police sergeant swore in an affidavit that there was no footage of the incident. D.I. 16-10 at 19. The Superior Court relied on this affidavit. And Walsh has not shown by clear and convincing evidence why that reliance was unreasonable. Based on the reasonable factual finding that the footage did not exist, the Superior Court reached the reasonable legal conclusion that counsel's decision not to "pursue the non-existent dashcam video" was sound. *Walsh*, 2018 WL 4638010, at *2, 4. So this claim fails.

### B. The suppression-motion claim

Walsh next claims that trial counsel was ineffective for failing to file a suppression motion. D.I. 2 at 5, 16.

1. *The Fourth Amendment version*. The first version of this claim hinges on the same premise as the dashcam-discovery claim. Walsh contends that police coerced his consent, so the search of his home violated the Fourth Amendment. *Id.* But as mentioned above, his only evidence of coercion was the dashcam footage that the state courts reasonably determined did not exist. *See Walsh v. State*, 2016 WL 3751911, at *2 (Del. 2016) (finding "nothing in the record to support … that his consent to the search of his apartment was involuntary"). And "counsel cannot be deemed ineffective for failing to raise a meritless claim." *Werts v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000).

Plus, counsel had "fully investigated" the issue. *Walsh*, 2018 WL 4638010, at *4. According to counsel's affidavit, counsel reviewed discovery and "spoke at length" with Walsh about his side of the story. D.I. 24-11 ¶ 3. Again, Walsh has not provided clear and convincing evidence that the Superior Court was unreasonable in crediting his lawyer's version of events. So the Superior Court deferred to counsel's "strategic

6

decision" not to file a suppression motion. *Walsh*, 2018 WL 4638010, at *4. That decision reasonably applied *Strickland*'s deferential standard.

Walsh has also failed to show prejudice: the Superior Court correctly held that Walsh could not be prejudiced by the failure to file a motion that would be dead on arrival. *Walsh*, 2018 WL 4638010, at *4; *Walsh*, 2019 WL 1125882, at *3.

2. *The Fifth Amendment version.* Walsh has also introduced, for the first time, another version of his suppression claim. He now says that police violated his "Fifth Amendment right by interrogating [him] while he was in custody without giving a *Miranda* warning. But counsel fail[ed] to bring this claim in a suppression motion." D.I. 2 at 16.

This claim fails. Even if his consent resulted from custodial interrogation, *Miranda* justifies suppressing incriminating statements—not the "nontestimonial physical fruits" discovered because of those statements. *United States v. Patane*, 542 U.S. 630, 645 (2004) (Kennedy, J., concurring in the judgment); *id.* at 634 (plurality op.). So the guns would still have been admissible, and counsel's performance was neither unreasonable nor prejudicial.

### C. The mistake-of-law claim

Walsh also contends that his trial counsel was ineffective for failing to explore a mistake-of-law defense. D.I. 2 at 16. He says a Philadelphia police officer told him that purchasing the black-powder guns was legal, even though he was a felon. *Id.* Walsh argues that this advice gives him a defense. *Id.* Admittedly, I am liberally construing Walsh's petition. But in the interest of completeness, I will address it.

7

This claim also fails. Walsh's lawyer correctly "explained to him that … if a police officer in another state tells you that you have a right to have a certain gun, that's not a legal defense in Delaware." D.I. 26-3 at 10; *see Bryson v. State*, 840 A.2d 631, 634 (Del. 2003) (explaining a defendant's heavy burden to establish a mistake-of-law defense). So counsel's performance was not unreasonable, and Walsh did not suffer prejudice from the failure to raise an imaginary defense.

**D. The improper-statements claim**

Walsh also claims that trial counsel was ineffective for failing to object to two parts of the prosecution's opening statement. First, the prosecution mentioned that Walsh had initially introduced himself as a detective and wore a "Concealed Weapons Permit" badge. *Id.*; D.I. 26-3 at 72. But this statement was backed up by testimony and relevant to the impersonation charge, so there was no ground for objecting to it. D.I. 26-3 at 87, 91.

Second, the prosecution said that a witness saw Walsh rack the gun, but the witness later said he had not directly seen it. D.I. 2 at 17. So Walsh's complaint about this statement is justified, to a point. The prosecution said in its opening that the witness "s[aw] the defendant actually … racking the gun. So he's playing with it. He's holding it, he's possessing the gun. [The witness] s[aw] him do that." D.I. 26-3 at 71. But the witness testified that he had not actually seen Walsh rack the gun. *Id.* at 83. Instead, the witness saw that Walsh "had a pistol in his hand," and then he saw the gun "go down and [] heard the sound of it racking." *Id.* at 81.

Walsh is technically correct. The witness did not *see* him rack the gun. But the witness testified to the same effect. And the prosecution's closing statement

8

accurately reflected the witness's testimony. D.I. 26-4 at 34 ("[T]he reason [the witness] said he didn't see the gun was because the defendant put the gun down while racking it."). So the state courts reasonably applied *Strickland*. *Walsh*, 2018 WL 4638010, at *3; *Walsh*, 2019 WL 1125882, at *3. Because the prosecution's opening statement was nearly identical to the witness's testimony, Walsh's counsel was not objectively unreasonable for declining to object to it. *Werts*, 228 F.3d at 203. And any minor discrepancy was corrected by the prosecution's closing statement, so Walsh was not prejudiced.

### E. The criminal-history claim

Next, Walsh argues that his trial counsel should have objected to admitting his criminal history into evidence. D.I. 2 at 17. He acknowledges that "the existence of a prior felony is an element of the [felon-in-possession] crime." *Id*. But he says trial counsel was ineffective for failing to object to (1) admitting the *nature* of the prior offense at trial and (2) the use of the prior offense at sentencing. *Id*.

The state courts again reasonably applied federal law in rejecting these arguments. *Walsh*, 2018 WL 4638010, at *5; *Walsh*, 2019 WL 1125882, at *4. The claim that Walsh's lawyer was ineffective is especially weak because Walsh rejected his lawyer's advice. His lawyer had negotiated a stipulation to avoid introducing the conviction's nature. But Walsh rejected that stipulation even after the trial judge explained the consequences. *Walsh*, 2018 WL 4638010, at *5; D.I. 26-3 at 5–8; D.I. 24-11 ¶ 5. Without the stipulation, there were no grounds to object: As Walsh admits, his prior felony was an element of the offense. So the prosecution had to introduce the prior conviction in some way. It did so through a redacted version of his burglary conviction,

"consistent with defendant's request." D.I. 26-3 at 6. Thus, counsel performed reasonably in implementing Walsh's preferred strategy, and he could not later object to what they had agreed to before trial. And any prejudice Walsh faced came from his own rejection of the stipulation, not counsel's performance.

The same goes for the prior conviction's use at sentencing. As the Superior Court noted on direct review, counsel agreed that New York second-degree burglary was a violent felony "for good reason." *State v. Walsh*, 2016 WL 7191539, at *2 (Del. Super. Ct. Dec. 12, 2016). Under Delaware law, a felon's sentence for unlawful firearm possession is enhanced if the prior felony was violent. 11 Del. C. §1448(e)(1)(c). And Delaware classifies second-degree burglary as a violent felony. §4201(c). Although Walsh's prior conviction was in New York, a previous conviction from another state "*shall* make the defendant liable to the [enhanced] punishment" so long as the other state's offense is "equivalent to" Delaware's. §4215A(a)(2) (emphasis added). Here, the New York law was "materially identical" to Delaware's. *Walsh*, 2016 WL 7191539, at *2. So the sentencing court had to consider the prior conviction, and the Superior Court reasonably concluded that any objection would have been futile. Thus, counsel's performance was neither unreasonable nor prejudiced Walsh. *See Werts*, 228 F.3d at 203.

### III. WALSH'S OTHER CLAIMS FAIL TOO

#### A. The postconviction-counsel claim

Along with his numerous complaints about his trial counsel, Walsh says his postconviction counsel was ineffective for "discouraging" him from pursuing his dashcam and suppression claims. D.I. 2 at 18. This claim fails because §2254 expressly bars it. §2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State

collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254.").

### B. The police-misconduct claim

Walsh next argues that police violated his due-process rights in coercing his consent to search his home and failing to provide *Miranda* warnings. D.I. 2 at 7. This "due process" claim should sound familiar: it repackages the suppression claim. Indeed, Walsh concludes this part of his brief by again noting "that counsel wasn't filing a suppression motion." *Id.* at 19.

Walsh did not raise this claim at trial or on direct appeal. So, on postconviction review, the Delaware courts deemed it procedurally barred under Delaware Superior Court Criminal Rule 61(i)(3). *Walsh*, 2018 WL 4638010, at *2; *Walsh*, 2019 WL 1125882, at *2. That rule provides, with a few inapplicable exceptions, that "[a]ny ground for relief that was not asserted in the proceedings leading to the judgment of conviction … is thereafter barred, unless the movant shows (A) [c]ause for relief from the procedural default and (B) [p]rejudice from the violation of the movant's rights."

"A federal habeas court will not review a claim rejected by a state court if the decision of the state court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Walker v. Martin*, 562 U.S. 307, 315 (2011) (internal quotation marks omitted, alteration adopted). Courts have consistently held that Rule 61 is such a ground. *See, e.g.*, *Holland v. Pierce*, 109 F. Supp. 3d 636, 646 (D. Del. 2015). To get an exception, Walsh must show (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law" or

(2) "that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Walsh shows neither. He gives no reason for the procedural failure. Nor does he show prejudice or a miscarriage of justice. Again, Walsh had a shot on the coerced-consent claim only if the dashcam footage showed something untoward. But that footage does not exist. And there was nothing else in the record showing coercion. Plus, whether Walsh's due-process rights were violated does not necessarily go to the justice of his conviction. Rather, the usual way to keep out fruits of a due-process-violating investigation is by suppression. But as noted above, that route was likely to fail. So this claim does not provide a basis for habeas relief.

**C. The juror-intimidation claim**

Next, Walsh suggests that a juror was frightened into convicting him. He says that, during the trial, a juror overheard his lawyer and a police officer conspiring in the hallway outside the courtroom. D.I. 2 at 8. The conspiracy, according to Walsh, involved his lawyer securing Walsh's conviction in exchange for favors from the officer. *Id.* at 8, 20. And though no juror admitted to overhearing this conversation, Walsh says the juror who overheard remained silent only for fear of reprisal. *Id.*

As a factual matter, the Delaware courts found this story meritless. *Walsh*, 2016 WL 3751911, at *2. And like ineffective-assistance claims, jury impartiality is a particularly fact-intensive question that reviewing courts should be reluctant to second-guess. *Skilling v. United States*, 561 U.S. 358, 386 (2010).

Here, the Delaware courts reasonably evaluated the evidence. True, Walsh's lawyer informed the court that a juror might have overheard a conversation he was

12

having with one of the officers. D.I. 26-4 at 11–13. The officer said that he thought the person who might have overheard them was not a juror anyway. *Id.* at 12. So the trial judge devised a solution. He told the parties to signal to him, as the jury filed in for the second day of trial, when the compromised juror entered the courtroom. *Id.* at 13–14. No party signaled. *Id.* at 14–15. And when the judge put the question to the jury squarely, no juror said that he or she had overheard the conversation. *Id.* So Walsh has not clearly and convincingly shown that his jury was biased, as required for a Sixth Amendment claim. *See Irvin v. Dowd*, 366 U.S. 717, 722–23 (1961).

### D. The Ex Post Facto Clause Claim

Finally, Walsh argues that his sentences violated the Ex Post Facto Clause. The Delaware law enhancing his sentence based on his prior convictions was passed in 2013, but his prior crimes were committed well before then. D.I. 2 at 10. So, he says, applying the 2013 law to him unconstitutionally imposes retroactive punishment. *Id.* On direct appeal, the Delaware courts rejected his claim. *Walsh*, 2016 WL 3751911, at *2–3; *see also Walsh*, 2016 WL 7191539, at *2.

They were right. The Ex Post Facto Clause "forbids the imposition of punishment more severe than the punishment assigned by law when the act to be punished occurred." *Weaver v. Graham*, 450 U.S. 24, 30 (1981). The "act to be punished" here was not Walsh's prior felonies but his possessing guns as a felon. So the law did not violate the Ex Post Facto Clause.

### IV. CERTIFICATE OF APPEALABILITY

Because I am issuing a final order denying Walsh's § 2254 application, I must decide whether to issue a certificate of appealability. 3d Cir. L.A.R. 22.2 (2011). If the

court is dismissing the claims on the merits, "[a] certificate of appealability may issue … only if the applicant has made a substantial showing of the denial of a constitutional right." §2253(c)(2). In other words, "petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). And if the court dismisses the claim on a procedural ground, petitioner must show that reasonable jurists would find debatable both the underlying constitutional claim and the procedural ruling. *Id.*

Walsh's claims are meritless, and at least one of them is also subject to "a plain procedural bar." *Id.* Reasonable jurists would not find these conclusions debatable. So I will not issue a certificate of appealability.

\* \* \* \* \*

Walsh raises a host of complaints about his convictions and sentences. But none renders his confinement unlawful. The Delaware courts reasonably applied clearly established federal law. So I dismiss his petition.